UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GEICO CASUALTY COMPANY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:18cv105 |
| | ) |
| NERAD GRACE MANGAI, Decedent, | ) |
| by her parent, JAMES MANGAI, et al., | ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the Plaintiff, GEICO Casualty Company ("GEICO"), on May 18, 2020.  Defendants, Nerad Grace Mangai, Decedent, by her parent, James Mangai, Brooke Mekete Dagnew, Decedent, by his parent, Mekete Dagnew, Kirubel Alemayehu Hailu, Decedent, by his parent, Alemayehu Hailu, and Israel Solomon Tamire, (collectively "Students"), filed their response on July 10, 2020.  GEICO filed its reply on July 20, 2020.

For the following reasons, the motion for summary judgment will be denied.

Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed.

R. Civ. P. 56(c)). Summary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party. *Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*. However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial", then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990).

Once a properly supported motion for summary judgment is made, the nonmoving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court . . . may consider the fact

undisputed for purposes of the motion or grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . .". Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).

It is true that in viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the nonmoving party and draw all legitimate inferences in favor of that party. *Anderson* at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Anderson at 249-50.

In deciding what insurance coverage, if any, a party is entitled to, the Court should apply Indiana law for contract interpretation. *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004). An insurance contract "is subject to the same rules of interpretation as are other contracts". *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006). As with other contracts, the interpretation of an insurance contract is a question of law. *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs.*, 865 N.E.2d 571, 574 (Ind. 2007). Accordingly, questions as to the interpretation of an insurance policy are "particularly well-suited for summary judgment." *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011).

<u>Discussion</u>

This original action is a declaratory judgment action filed by GEICO Casualty Company, seeking that this Court (a) declare and determine that the Students were not "occupying" an insured automobile on the date of the accident; (b) declare and determine that GEICO Casualty

3

Company does not owe coverage, benefits, or payments under either the Uninsured Motorist Coverage or Underinsured Motorist Coverage based on the definitions contained in the applicable policy of insurance in effect on the date of the accident; and (c) declare and determine that GEICO Casualty Company has no obligation to pay the Students, or their designated representatives in this case, for any claims or defense or indemnification obligations pursuant to the terms of the applicable policy of insurance arising out of the February 21, 2016 accident. (Plaintiff's Exhibit "A" – Complaint for Declaratory Judgment).

The insurance policy at issue is a GEICO Casualty Insurance Indiana Family Automobile Insurance Policy issued to David A. Sollenberger and Mary L. Sollenberger under policy number 4288-83-43-20 with effective dates of coverage from November 28, 2015 through May 28, 2016. (Plaintiff's Exhibit "B" – Certified GEICO Policy). The GEICO Policy at issue included applicable uninsured and underinsured motorist coverage in the amount of One Hundred Thousand Dollars ($100,000.00) per person and Three Hundred Thousand Dollars ($300,000.00) per accident. (Plaintiff's Exhibit "C" – Certified Declarations Page).

In the early morning hours of February 21, 2016, Deangelo Evans was operating a motor vehicle northbound on Interstate 69 near Fairmount, Indiana, when he drove off the roadway and into the grassy median separating northbound and southbound Interstate 69, and then struck Nerad Grace Mangai, Brooke Mekete Dagnew, Kirubel Alemayehu Hailu, and Israel Solomon Tamire, killing Mangai, Dagnew, and Hailu, and seriously injuring Tamire. (Plaintiff's Exhibit "D" – Complaint filed in Grant Superior Court). Mangai, Dagnew, Hailu and Tamire were outside a vehicle which was owned by David and Mary Sollenberger and which was a vehicle listed on the GEICO policy. The decedents, by their respective parents, as well as Tamire, filed suit in the

4

Grant County Superior Court on December 13, 2017, against Evans, Mercedez Main (the owner of the vehicle operated by Evans on the date of the accident), as well as GEICO Casualty Company for possible uninsured or underinsured motorist benefits under the GEICO policy. (Plaintiff's Exhibit "D" – Grant County Complaint). That case was stayed pending this Court's determination of the applicable coverage and indemnification issues as requested by GEICO's Complaint for Declaratory Judgment filed in this matter. (Plaintiff's Exhibit "E" – Order Staying Grant County case).

GEICO contends that it is entitled to judgment as a matter of law on all claims as presented by the Defendants in this matter, and GEICO seeks a judgment from this Court that it does not owe coverage, defense, or indemnification under the applicable Policy for any claims, particularly the pending uninsured or underinsured claims of the decedents and Tamire, arising out of the automobile accident which occurred on February 21, 2016.

GEICO has presented the following facts, which do not appear to be disputed, and are supported by the record. On February 21, 2016, the Students were students at Manchester College located in North Manchester, Wabash County, Indiana. (Plaintiff's Exhibit "D", ¶1-2 of Count I). On said date, Dagmawi Tadesse, Nebiyu Alemu, and Amanuel Atsbha were also students at Manchester College. (Plaintiff's Exhibit "F" – Deposition of Tadesse, page 6, lines 19-24; page 8, lines 7-13; page 10, lines 14-16).

At approximately 8:00 p.m. on February 20, 2016, Tadesse picked up a Pontiac van owned by Mary Sollenberger, which he had driven on numerous prior occasions. (Plaintiff's Exhibit "F" – page 10, line 24 through page 13, line 17). The Manchester students knew Mary Sollenberger as she was very close to the international community and often had the international

5

students to her home for holidays. (Plaintiff's Exhibit "F" – page 11, lines 10-15). Tadesse had permission to operate the van on that evening. (Plaintiff's Exhibit "F" – page 11, lines 19-21).

Tadesse and the other Manchester students then traveled in the van to Taylor University, where they picked up another friend, Ruhama Mergia. (Plaintiff's Exhibit "F" – page 14, lines 5-23). The individuals then proceeded to Ball State University, where they attended a dance, and they arrived at approximately 10:30 p.m. (Plaintiff's Exhibit "F" – page 15, lines 9-19). The students stayed until approximately midnight and then the seven of them (minus Mergia) got back into the van and started to drive back to Manchester, with Tadesse as the driver of the van. (Plaintiff's Exhibit "F" – page 17, line 22 through page 18, line 9).

Approximately twenty (20) minutes into the drive heading on northbound Interstate 69 in the left-hand lane, the left front tire of the van blew out. (Plaintiff's Exhibit "F" – page 18, lines 12-20; page 19, lines 14-18). According to Israel Tamire, once the tire blew, Tadesse parked the van to the left side and off the road. (Plaintiff's Exhibit "G" – Deposition of Tamire, page 21, lines 13-25). Tadesse testified that all tires of the van were to the left of the white lines and the van was off the roadway – likely on the gravel between the roadway and the grassy median. (Plaintiff's Exhibit "F", page 21, lines 3-25).

Once the tire blew and Tadesse pulled the van off the roadway, everyone immediately exited the vehicle, with the exception of Amanuel Atsbha and Nerad Grace Mangai, who were sleeping in the van. (Plaintiff's Exhibit "G" – page 24, lines 3-18). At that time, Tadesse got the jack from inside the van and they placed it underneath the front left tire to try to lift the van up to attempt to change the tire. (Plaintiff's Exhibit "G" – page 25, lines 1-17; Exhibit "F" – page 23, lines 11-13). Tamire stated that one of the things that took the most time was trying to get the

6

bolts off the tire. (Plaintiff's Exhibit "G" – page 25, lines 21-24). During this time, the other two individuals in the vehicle were told to get out of the van so they could continue in their efforts to remove the lug nuts and also work with the jack. (Plaintiff's Exhibit "G" – page 26, lines 9-13). Tamire estimated that the time frame from when the tire blew until the time of the accident was approximately an hour and a half to two hours, and they were working on the lug nuts and jack during that time. (Plaintiff's Exhibit "G", page 29, lines 1-17). Tadesse estimated that they were working with the jack for "at least fifteen minutes". (Plaintiff's Exhibit "F" – page 23, lines 11-18).

   Both Tamire and Tadesse testified that the jack either did not work or broke, and thus several of the individuals, namely Tadesse, Alemu, and Atsbha went toward the back of the van to try to locate another jack. (Plaintiff's Exhibit "F" – page 23, lines 11-25; Exhibit "G" – page 28, lines 10-15). At that time, Tamire stated that he was likely within five (5) feet from the van. (Plaintiff's Exhibit "G", page 27, line 3 through page 28, line 2). Tadesse stated that when he was at the back of the van with Alemu, he believed the remainder of the individuals were in the grass, but he could not be certain where or how far into the grass any of the individuals were standing. (Plaintiff's Exhibit "F" – page 27, line 7 through page 29, line 2). As Tadesse was looking for a second jack in the back of the van, the vehicle driven by Evans came through and struck the decedents and Tamire. (Plaintiff's Exhibit "D", ¶9; Plaintiff's Exhibit "F", page 29, lines 3-7). Tadesse was unable to state whether the vehicle operated by Evans ever struck the disabled van. (Plaintiff's Exhibit "F", page 29, lines 17-21). Mangai, Dagnew, and Hailu were killed as a result of the actions of Evans, and Tamire suffered significant injuries from being struck by Evans' vehicle. (Plaintiff's Exhibit "D", ¶10-11).

In their Complaint for Damages filed in the Grant County Superior Court, the Estates of Nerad Grace Mangai, Brooke Mekete Dagnew, and Kirubel Alemayehu Hailu, as well as Israel Solomon Tamire contend that they are entitled to either uninsured or underinsured motorist benefits under the applicable GEICO policy issued to David Sollenberger and Mary Sollenberger.

Before this Court, GEICO argues that summary judgment in favor of GEICO is proper and this Court should declare that the decedents and Tamire were not "occupying" the disabled insured van at the time of the accident, and thus GEICO Casualty Company does not owe coverage, defense, benefits, or indemnification payments under either the uninsured or underinsured motorist coverages under the Policy.

The Students, however, argue that they were in fact "occupying" the vehicle, as that term has been interpreted by case law, and are thus "insured persons".

The applicable GEICO Policy issued to David Sollenberger and Mary Sollenberger in effect on the date of the accident in this case included coverage for both uninsured and underinsured motorists. As for possible uninsured motorist coverage, the Policy, in Section IV, contained the following language:

> "**LOSSES WE PAY**
>
> Under the Uninsured Motorists Coverage we will pay damages for **bodily injury** caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** arising out of the ownership, maintenance or use of that auto."

(Plaintiff's Exhibit "B", Policy, Section IV, page 13)(emphasis in original).

As the word "insured" was bolded and italicized in the Policy, this means that this term is specifically defined in the uninsured motorist portion of the Policy, as follows:

8

"DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

1. **Insured** means:

>  (a) the individual named in the declarations and his or her spouse if a resident of the same household;
>  (b) relatives of (a) above if residents of his household;
>  (c) any other person while occupying an owned auto;"

(Plaintiff's Exhibit "B", Policy, Section IV, page 12)(emphasis in original).

As the parties point out, the key term in this case is the definition in the Policy of "occupying", which is defined in the Policy as "in, upon, entering into or alighting from". (Exhibit "B", Policy, Section IV, page 13).

In reviewing policy terms, courts should construe them "from the perspective of an ordinary policyholder of average intelligence." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 246-247 (Ind. 2005). If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). Insurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law. *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006). Thus, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Amerisure, Inc. v. Wurster Constr. Co., Inc.*, 818 N.E.2d 998, 1002 (Ind. Ct. App. 2004). Moreover, interpretation should harmonize the policy's provisions rather than place its provisions in conflict. *Allgood* at 247.

Where an ambiguity exists, the policy is generally construed in favor of the insured. *USA

9

*Life One Ins. Co. of Ind. v. Nuckolis*, 682 N.E.2d 534, 538 (Ind. 1997). This is particularly the case where a policy excludes coverage. *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996). An ambiguity does not exist simply because an insured and an insurer disagree about the meaning of a provision, but only if reasonable people could disagree about the meaning of the contract's terms. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002). The insured is required to prove that his or her claims fall within the coverage provision of the policy, but the insurer bears the burden of proving specific exclusions or limitations to policy coverage. *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir. 1996)(applying Indiana law).

Thus, the key to determining whether there would be coverage under the GEICO Policy for the Students is to determine if the Students were "occupying" the vehicle at the time of the accident. That is, were they "in, upon, entering into or alighting from" the vehicle on February 21, 2016. GEICO argues that the facts of the present case mirror the facts in the case of *Ohio Cas. Ins. Co. v. Herring-Jenkins*, 830 F.Supp.2d 566 (N.D. Ind. 2011).

In *Herring-Jenkins*, Jenkins was standing a couple of feet behind the left side bumper of the covered vehicle when an uninsured motorist struck and killed him. Jenkins was working to repair potholes in a construction lane on Interstate 80 in Indiana. Ohio Casualty Insurance Company insured the dump truck Jenkins was working behind when he was struck and killed. Ohio Casualty filed a Complaint for Declaratory Judgment seeking a Court determination that its policies did not provide coverage for the claims of Jenkins' Estate, including an argument that as Jenkins was not "occupying" the insured vehicle at the time of the accident, his Estate was not entitled to uninsured motorist benefits.

The *Herring-Jenkins* Court reviewed the definition of "occupying" in the Ohio Casualty

policy, which defined it as "in, upon, getting in, on, out or off". The Court then stated that since the Estate did not indicate which manner of "occupying" included in the definition Jenkins satisfied, "the Court will consider each definition, remembering that they are intended to define occupying." *Id*. at 573 (citing *Mich. Mut. Ins. Co. v. Combs*, 446 N.E.2d 1001, 1004 (Ind. Ct. App. 1983)).

The parties do not argue that the Students were "in" the vehicle at the time of the accident. Thus, the first part of the definition (the word "in") does not provide coverage to the Students.

GEICO argues that none of the Students were "upon" the insured vehicle at the time of the accident. Indiana courts considering coverage under policies that defined "occupying" as being "in or upon, entering into or alighting from" the automobile have construed the word "upon" to mean "to encompass physical contact with the covered vehicle". *Miller v. Loman*, 518 N.E.2d 486, 491 (Ind. Ct. App. 1987)(citing *United Farm Bureau Mut. Ins. Co. v. Pierce*, 152 Ind. App. 387, 283 N.E.2d 788 (Ind. Ct. App. 1972) *and Mich. Mut. Ins. Co. v. Combs*, 446 N.E.2d 1001 (Ind. Ct. App. 1983)).

The *Herring-Jenkins* Court recounted the facts of the *Pierce* and *Combs* cases and then held that Jenkins was not "upon" the vehicle at the time of his accident. In *Pierce*, the Plaintiff's automobile was stuck in the snow and he had gotten out of the vehicle in an attempt to push it. As he was pushing it, he cut his fingers on the fender. The Court determined that since he was in physical contact with the vehicle when injured, he was "upon" his vehicle and thus coverage was afforded in that case.

In *Combs*, the insured driver experienced engine problems with his vehicle, and he left the

car and sought help from his brother, who worked nearby. They left the vehicle on two occasions to obtain the necessary part to repair the engine. As the insured's brother was working on the engine, stooped over the rear of the vehicle with his knees resting on the bumper, he was struck by an uninsured motorist. The *Combs* Court discussed the physical contact requirement, but also thought the results reached by some courts that did not rely exclusively on the physical contact rule were equally understandable because, while there was no physical contact, there was "a sufficient relationship between the claimant and the car so that it could reasonably be said that the claimant was an 'occupant'". *Combs* at 1005. The *Combs* Court concluded that, whether the physical contact rule or a claimant-vehicle relationship analysis was used to interpret the word "upon", the claimant in *Combs* was entitled to coverage because he was both in physical contact with the vehicle and his actions evidenced a relationship with the vehicle and its operation. *Herring-Jennings* at 574-575.

The *Herring-Jenkins* Court determined that since Jenkins was not in physical contact with the vehicle, and while he anticipated becoming a passenger at some point, that was not until after his shift and thus he was not determined to be "upon" the vehicle. GEICO argues that in the present case, none of the Students were in physical contact with the disabled vehicle when they were struck. Both Dagmani Tadesse and Israel Tamire testified that the decedents were away from the vehicle in the grassy median when they were struck by the vehicle operated by Deangelo Evans. GEICO argues that even though the Students intended to re-enter the vehicle once it was fixed, this is not sufficient to prove that they were "upon" the insured vehicle.

The Students have reached a different conclusion, however and argue that the case law supports their position that they were "upon" the vehicle at the time of the accident. The Students

point out that the common denominator in the cases cited by GEICO, is that the claimant "either was or was intended to be a passenger or operator of the insured vehicle." *Combs* at 1005-06; *see also Id*. at 1007 (noting that coverage applied in these cases even where physical contact was absent because the claimants "maintained a close and substantial connection with occupancy and use of the insured vehicle"). Thus, in the cited cases, it was "the claimant's relationship with the insured auto that determines whether the claimant was 'upon' the car so as to have been 'occupying' it for purposes of coverage." *Id*. at 1006.  The *Combs* Court concluded that whether the physical contact rule or a claimant-vehicle relationship analysis was used to interpret the word "upon", the claimant in *Combs* was entitled to coverage because he was both in physical contact with the vehicle and his actions evidenced a relationship with the vehicle and its operation.  *Id*. at 1007.

The Students point out that the testimony shows that each of the Students attempted to assist with repairing the tire and maintained a close and substantial relationship with respect to occupancy of the insured vehicle and it was their intention to continue their trip home in the insured vehicle as soon as the tire was fixed.  The deposition testimony indicates that three of the students were searching for another jack when the accident occurred.

The Students further cite to *KLLM, Inc. v. Legg*, 826 N.E.2d 136 (Ind.Ct.App. 2005), which construed the "in or upon" language in the Indiana Guest Statute.  The *KLLM* Court, relying upon *Combs*, found that a person could be considered to be "upon" a motor vehicle if sufficient relationship existed between that person and the vehicle. *Id*. at 144.  The Indiana Court found that such a relationship existed between the claimant and the tractor-trailer he had been riding in even though he had exited the vehicle, because he had only temporarily left the vehicle to

13

assist the driver in backing up the tractor-trailer, and thus his actions were in direct furtherance of their continued journey. The Students point out that they exited the vehicle for two reasons, to remove weight from the vehicle so it could be more easily raised, and to assist with the tire repairs. Thus, the Students conclude that their actions were in direct furtherance of their journey home such that a sufficient relationship existed between them and the insured vehicle to find that they were "upon" the vehicle at the time of the accident.

The Students distinguish *Jenkins* by the fact that Jenkins was not in physical contact with the vehicle nor was he directing his attention to the vehicle in an attempt to render it occupational as in *Combs* and the case at bar. Rather, Jenkins was performing work on the road behind the insured vehicle and only intended to re-enter the vehicle at the end of his shift.

This court agrees with the Students that they were "upon" the vehicle at the time of the accident, as that term is fleshed out by the pertinent case law. They clearly had a continuous relationship with the vehicle throughout their ordeal. Thus, they were "occupying" the vehicle at the time of the accident, and Section IV of the Policy provides coverage to the Students for the February 21, 2016 accident.

Accordingly, GEICO's motion for summary judgment will be denied.

<u>Conclusion</u>

On the basis of the foregoing, GEICO's motion for summary judgment [DE 36] is hereby DENIED.

Entered: August 4, 2020.

<u>s/ William C. Lee</u>
William C. Lee, Judge
United States District Court
